IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KENNETH R. GILLUM,

    Plaintiff,

       v.

                             CIVIL NO.: WDQ-14-0173

PILOT TRAVEL CENTERS, LLC,

    Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Kenneth R. Gillum sued Pilot Travel Centers, LLC ("Pilot") for negligence after a slip and fall at a Pilot facility. Pending are Pilot's motion for summary judgment, Gillum's cross-motion for summary judgment, Pilot's motion to strike the cross-motion, and Gillum's motion for leave to file *nunc pro tunc*.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).  For the following reasons, Pilot's motion to strike will be granted; all other motions will be denied

I.   Background[1]

Gillum is a commercial truck driver who worked for several companies and received driver safety training.  ECF No. 31-2 (hereinafter "Gillum Dep.") at 32:5-54:1.  Gillum also trained new drivers how to handle icy conditions.  *Id.* at 42:5-43:18. In October 2010, Gillum began working for Schneider National Trucking Company ("Schneider").  *Id.* at 57:6-9.  "Schneider was more adamant about [safety] than other companies [Gillum had] worked for."  *Id.* at 56:10-18.  Gillum was informed that if he ever felt unsafe, he was to "sit and wait" in the cab of the truck, "call in to dispatch, [and] don't move . . . ."  *Id.* at 54:1-55:11.  Schneider terminated drivers who did not follow the safety protocols.  *Id.* at 56:10-18.

On December 16, 2010, Gillum was driving for Schneider in Hagerstown, Maryland.  ECF No. 2 at 3.  Gillum's girlfriend, Velma Duvall, was riding with him.  ECF No. 38-3 at 2 (Gillum's responses to interrogatories).  "As a truck driver, the law required [Gillum] to take a 10-hour break from work every 14 hours of work performed before driving again.  Since [his] time

---

[1] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  When cross motions for summary judgment are filed, "the facts relevant to each [cross motion] must be reviewed in the light most favorable to the nonmovant."  *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

was almost up for the day, [Gillum] decided to take a break at the Pilot Truck Stop on Interstate 70 in Hagerstown, Maryland . . . ."  *Id.*  Gillum pulled into the Pilot at about 9:30 am and parked his truck with other commercial trucks in the back of the parking lot.  *See id.*; Gillum Dep. at 100:1-16.  Gillum went to sleep in the cab.  ECF No. 38-3 at 2.

Around 7:00 pm, Gillum woke up and saw that about four inches of snow had fallen while he had slept.[2]  ECF No. 38-3 at 2.  Gillum noticed that the sidewalks and areas around the building had been salted, but the parking lot leading to and from the commercial trucks was still covered in snow and slush.  *See* Gillum Dep. at 95:10-101:5-8.  There were truck tracks running across the parking lot and boot prints leading to the Pilot building.  *Id.* at 111:3-6.

Because Gillum was not "on the clock" yet, he and Duvall decided to walk to the Pilot building for coffee and to use the restroom.  *See* Gillum Dep. 100:1-8, ECF No. 38-3 at 2.  Gillum understood that "it's always dangerous to walk across snow," but believed he would be safe if he used caution.  *Id.*  Gillum put on his anti-skid and oil resistant work boots because of the snow.  ECF No. 38-3 at 2.  Gillum did not put on the cleats he

---

[2] Pilot disputes that this event ever occurred because the weather history report for Hagerstown on December 16, 2010 states that there was only 1.4 inches of snowfall.  ECF No. 43 at 7.  Pilot requests that the Court take judicial notice of the report.  *Id.*

was supposed to wear if there was ice because he did not see any ice and did not feel they were necessary.[3]  *See id.*; Gillum Dep. at 106:1-8.

Gillum "checked the [truck's] landing, [] swept off [the] steps and checked it there, and it wasn't [so] slippery where [he] wouldn't be able to walk across it."  Gillum Dep. at 103:14-21.  Gillum and Duvall followed the other boot prints to the Pilot building and believed they were walking "the ordinary path from [his] truck to the pathway into the building."  *Id.* at 155:6-10.  Gillum cautiously walked to the Pilot building without slipping.  *Id.* at 163:3-20.  Gillum and Duvall remained inside the Pilot building for 15-20 minutes.  *Id.* at 106:3.

Although Gillum saw a Pilot employee salting sidewalks and the area around the filling stations, neither he nor Duvall told any Pilot employee that they were concerned about the snow in the parking lot.  *See* Gillum Dep. at 109:1-5.  When Gillum and Duvall left the Pilot building, they walked back to the truck the way they had come.  *See id.* at 101:10-15.  Looking in front of him, Gillum only saw snow on the ground.  *See id.* at 110:20-22.  About half-way back to the truck, Gillum slipped and fell, hitting his knee.  *See id.* at 101:13-15; ECF No. 38-3 at 2.

---

[3] Gillum has consistently maintained that he did not know there was ice under the snow and that he needed a warning of icy conditions.  *See* Gillum Dep. at 156:4-163:20.  Gillum implies that had he known of the ice under the snow, he would have worn his cleats.  *See* Gillum Dep. at 106:1-8.

Gillum then saw that there was ice hidden underneath the snow where he had fallen. Gillum Dep. 112:4-15. Until that moment, Gillum was unaware that there was ice under the snow. *Id.* at 163:3-20. Gillum "hobbled" back to the truck and called his dispatcher to tell her that he had fallen in the parking lot of a Pilot truck stop. *Id.* at 112:4-6; ECF No. 38-3 at 2. The dispatcher "asked [him] to bring the truck back, if possible, and to report to the hospital." ECF No. 38-3 at 2. As a result of his fall, Gillum suffered injuries to his knee and back, and had to undergo two surgeries. *Id.*

On December 11, 2013, Gillum sued Pilot for negligence in the Circuit Court for Washington County. ECF No. 1-2. On January 23, 2014, Pilot removed the case to this Court. ECF No. 1. On March 25, 2014, the Court entered a Scheduling Order which set the dispositive pretrial motions deadline as September 8, 2014. ECF No. 19. The Plaintiff's deposition was held on August 1, 2014. ECF No. 46 at 1. After the deposition, "[t]he parties broadly discussed the filing of dispositive motions;" however, the parties did not agree who would file the first summary judgment motion. *See id.*

On September 4, 2014, Pilot moved for summary judgment. ECF No. 31. Responses were due on September 22, 2014. On October 21, 2014, Gillum filed his opposition and cross-motion for summary judgment. ECF No. 38. On November 4, 2014, Pilot

moved to strike the cross-motion as untimely.  ECF No. 42.  On

November 13, 2014, Gillum moved for leave to file *nunc pro tunc*.

ECF No. 46.

II.  Analysis

   A. Pilot's Motion to Strike and Gillum's Motion for Leave to
      File *Nunc Pro Tunc*

     Pilot moves to strike Gillum's cross-motion as untimely

because it was not filed within the deadline for dispositive

motions and was filed a month after the opposition deadline for

Pilot's motion.  ECF No. 42 at 1-2.  Gillum asserts that his

filing was late because Pilot "unilaterally filed a Motion for

Summary Judgment first without further consultation . . . in

violation of LR 105.2(c)."[4]  ECF No. 46 at 1.  Further, Gillum

states that the late filing is the result of excusable neglect

because counsel was busy handling discovery issues in this case.

*See id*. at 2.

     Local Rule 105.2(c) requires the parties to agree which

party will file the initial summary judgment motion.  Pilot

---

[4] LR 105.2(c) states:

> In a two-party case, if both parties intend to file
> summary judgment motions, counsel are to agree among
> themselves which party is to file the initial motion.
> After that motion has been filed, the other party
> shall file a cross-motion accompanied by a single
> memorandum (both opposing the first party's motion and
> in support of its own cross-motion), the first party
> shall file an opposition/reply, and the second party
> may then file a reply.

violated this rule when it did not consult with Gillum before filing its motion on September 4, 2014.  Gillum was not required to file his cross-motion before the dispositive motion deadline as Pilot asserts; in accordance with LR Rule 105.2(c), Gillum was to file his opposition and cross-motion as a single memorandum.

Local Rule 105.2(a) requires that "all memoranda in opposition to a motion shall be filed within fourteen days of the service of the motion."  If service is by mail or electronic means, Federal Rule of Civil Procedure 6(e) permits the respondent an additional three days.  However, "Local Rule 105.2(a) does not provide the consequence for a failure to meet the prescribed deadline.  Thus, the district court, in its discretion, may decide whether to consider an untimely opposition."  *Curtis v. Evans*, No. DKC 2003-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004).

Gillum's opposition and cross-motion were due on September 22, 2014.  Gillum did not file his memorandum until October 21, 2014.  ECF No. 38.  Gillum did not seek leave of the Court to file late or explain the month-long delay.  Gillum only sought to explain his inaction after Pilot moved to strike the cross-motion.  Further, Gillum's explanation is simply that Pilot violated the local rules first, and his counsel was busy.  This explanation is insufficient to overlook Gillum's month-long

delay without asking the Court either to extend Gillum's time to
file or, grant permission to file late in October.  Attorneys
are frequently busy; this does not excuse them from complying
with the Local Rules.  Accordingly, the Court will grant Pilot's
motion to strike and deny Gillum's motion for leave to file *nunc
pro tunc*.[5]

   B. Pilot's Motion for Summary Judgment

   1. Legal Standard

   The Court "shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).[6]  In considering the motion, the judge's function

---

[5] Even if the Court had considered Gillum's cross-motion for
summary judgment on the merits, Gillum would not have prevailed.
Gillum's motion is premised on the speculation that because
there were boot prints in the snow of the parking lot, Pilot
*must have* known of the danger of the ice and customers slipping.
*See* ECF No. 38 at 9-13.  As a matter of law, this sort of
assumption cannot support a finding that Pilot was negligent.
*See Frostbutter v. Bob Evans Farms, Inc*. No. CBD-12-2388, 2013
WL 4026985, at *7 (D. Md. Aug. 6, 2013).  Pilot also disputes
whether this incident actually occurred; the Court cannot
resolve this factual dispute.  *See* Fed. R. Civ. P. 56(a);
*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).
Gillum's motion only adresses his cross-motion; he does not
respond to any of Pilot's summary judgment arguments.  *See* ECF
No. 38 (containing no discussion of assumption of the risk or
contributory negligence).

[6] Rule 56(a), which "carries forward the summary-judgment stan-
dard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment."  Fed.
R. Civ. P. 56 advisory committee's note.

is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

2. Gillum's Negligence Claim

Pilot argues that it is entitled to summary judgment because Gillum assumed the risk of slipping and falling when he chose to walk across a snow-covered parking lot, and Gillum was contributorily negligent because he did not act as a reasonable person. ECF No. 31-1 at 5, 16.

a. Assumption of the Risk

Assumption of risk "is grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk." *Crews v. Hollenbach*, 751 A.2d 481, 488 (Md. 2000). "[T]o establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM P'ship v. Martin,* 702 A.2d 730, 734 (Md. 1997).

"An assumption of the risk defense, properly asserted, may be grounds for entering summary judgment for a defendant, or otherwise finding that the defense has been established as a matter of law, but this is only true when 'the undisputed facts permit but one reasonable determination,' namely, that the plaintiff has assumed the risk as a matter of law." *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212, 224 (Md. 2011) (quoting *Hooper v. Mougin,* 284 A.2d 236, 239 (Md. 1971)). "In the usual case, [the plaintiff's] knowledge and appreciation of the danger will be a question for the jury; but where it is clear that any person of normal intelligence in [the plaintiff's] position must have understood the danger, the issue

must be decided by the court." *Gibson v. Beaver,* 245 Md. 418, 421, 226 A.2d 273, 275 (1967).[7]

"Maryland's courts apply a hybrid objective-subjective standard to determine whether an injured plaintiff had the requisite knowledge and appreciation of the risk." *Meyers v. Lamer*, 743 F.3d 908, 912 (4th Cir. 2014). In *Gibson v. Beaver*, 226 A.2d 273, 275 (Md. 1967), the Court of Appeals of Maryland held that "[i]n determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." Thus, there are "certain risks which anyone of adult age must be taken to appreciate," including "the danger of slipping on ice, of falling through unguarded openings of lifting heavy objects . . . . ." *Id.* (quoting *Prosser and Keeton* § 68, at 488). "When it is clear that a person of normal intelligence in the position of plaintiff *must* have understood the danger, the issue is for the court." *Schroyer v. McNeal,* 592 A.2d 1119, 1123 (Md. 1991).

---

[7] *See also* Restatement (Second) of Torts § 496D cmt. e (1965) ("Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine the issue only where reasonable [persons] could not differ as to the conclusion.").

In its motion for summary judgment, Pilot relies on *Gibson*'s reasoning that "slipping on ice" is a danger that every adult understands, and, thus, Pilot is entitled to judgment as a matter of law. *See* ECF No. 31-1 at 7.  However, in the cases cited by Pilot, the plaintiffs *saw* the ice and then made their decisions to walk across it anyway.  *See, e.g.*, *Morgan State University v. Walker*, 919 A.3d 21, 27 (Md. 2007) ("Respondent's own testimony made clear that she was aware of the snow and ice in the parking lot."); *Schroyer*, 592 A.2d at 1121.

Here, Gillum has continually maintained that he did not see the ice or know of its existence; he acted reasonably for walking across *snow*, and if he had been warned of the ice, he would have made different decisions.  *See* Gillum Dep. at 106:1-8, 156:4-163:20.  Pilot appears to argue that because Gillum saw the snow and knew it could be slippery, he objectively should have understood that there could be ice under the snow and assumed the risk that such ice existed.  *See* ECF No. 43 at 5. The Court of Appeals of Maryland confronted a similar argument in *Poole v. Coakley & Williams Const., Inc.*, 31 A.3d 212 (Md. 2011), and clarified *Gibson*'s "objective" standard.

In *Poole*, the plaintiff slipped and fell walking across his employer's parking lot.  31 A.3d at 217.  The parking lot was icy, but there was "a stream of water" that "created a path" through the ice.  *Id.*  The plaintiff did not see ice under the

water and believed that "wadding through [the] stream" was the
only safe path across the lot.  *Id.* at 217-20.  When the
plaintiff was walking carefully through the stream, he slipped
on a patch of black ice under the water.  *Id.*  When the
plaintiff sued his employer and others for his injuries, the
trial court granted summary judgment for the defendants because
the plaintiff assumed the risk under the *Gibson* standard.  *Id.*
at 220-21.

In granting summary judgment, the trial court relied on a
recent Maryland Court of Special Appeals decision, *Allen v.
Marriot*, 961 A.2d 1141 (Md. Ct. Spec. App. 2009).  In *Allen*, the
plaintiff sued a hotel after slipping and falling on black ice
in the parking lot.  961 A.2d at 1142.  The Court of Special
Appeals held that summary judgment was proper because "the path
to knowledge is not limited to the sense of sight alone . . . .
[k]nowledge springs not only from direct sense perception but
from the drawing of inferences from circumstantial evidence.
*Induction is as worthy a highway to knowledge as is sensation.*"
*Id.* at 1149 (emphasis added).  Thus,

> [t]he [plaintiff's] assumed risk [was] not that of
> stepping on ice *per se*.  *The assumed risk [was] that
> of stepping onto an unknown surface with an awareness
> that it might well be icy*.  With white ice, you see it
> is there.  With black ice, *you infer the likelihood
> that it may be there*.  Either establishes the element
> of awareness.

*Id.* at 1152 (emphasis added).

The *Poole* court held that *Allen* impermissibly "expand[ed] the knowledge prong of the assumption of the risk test to permit the trial judge to impute knowledge under circumstances where the risk of danger may not have been fully known to and understood by the plaintiff, thereby enlarging the category of cases in which a court may impute knowledge to a plaintiff as a matter of law." *Poole*, 31 A.2d at 231. "[T]he doctrine of assumption of risk will not be applied [as a matter of law] unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Id.* (quoting *Schroyer*, 592 A.2d at 1123) (alterations and emphasis made in *Poole*). "Thus, in order for a plaintiff to have assumed the risk of his or her injuries as a matter of law, we require that a plaintiff 'must' have known that the risk was 'actually present,' not that he or she 'would,' 'should,' or 'could' have known that the risk 'might well be present.'" *Id.*

The court found that summary judgment for the defendants was improper because the plaintiff did not confront "obvious, avoidable, [and] visible ice." *Poole*, 31 A.2d at 228. "Even if the physical layout of the parking lot, including: the location of the visible ice, the stream, the drain, the cars, etc. were undisputed, the issue of [the plaintiff's] knowledge concerning the very existence of the dangerous condition, *i.e.*, the black

14

ice beneath the stream of water that covered the path he trod,
was subject to more than one reasonable inference." *Id.*

Here, as in *Poole*, Gillum has maintained that no ice was
visible and he did not know of its presence. *See* Gillum Dep. at
106:1-8, 156:4-163:20.  The Court cannot infer knowledge and,
thus, cannot hold as a matter of law that Gillum assumed the
risk of slipping and falling on ice under the snow.

　　　　　　b. Contributory Negligence

"Contributory negligence is the failure to observe ordinary
care for one's own safety.  It is the doing of something that a
person of ordinary prudence would not do, or the failure to do
something that a person of ordinary prudence would do, under the
circumstances." *Menish v. Polinger Co.*, 356 A.2d 233, 236 (Md.
1976) (internal quotation marks and citation omitted).
"Ordinarily, the question of whether the plaintiff has been
contributorily negligent is for the jury, not the judge, to
decide." *Campbell v. Balt. Gas & Elec. Co.*, 619 A.2d 213, 216
(Md. Ct. Spec. App. 1993).  "It is only where the minds of
reasonable persons cannot differ that the court is justified in
deciding [contributory negligence] as a matter of law."
*Williamson Truck Lines, Inc. v. Benjamin*, 222 A.2d 375, 379 (Md.
1966).  "Like the assumption-of-risk defense, a determination
that a plaintiff was contributorily negligent serves as a
complete bar to recovery against a defendant who was also

negligent."   Meyers, 743 F.3d at 914.   The defendant bears the
burden of proving contributory negligence.   *Id.*

Pilot argues that Gillum was contributorily negligent
because he "should have put on his cleats, stayed in the Pilot,
or informed the Pilot employees of the slippery conditions . . .
."   ECF No. 31-1 at 17-18.   However, "[t]he issue of
contributory negligence may be decided as a matter of law only
when the evidence shows 'some prominent and decisive act which
directly contributed to the accident and which was of such a
character as to leave no room for difference of opinion thereon
by reasonable minds.'"   *Davis-Brown v. Scott Management, Inc.*,
No. JKS 13-3319, 2014 WL 6646921, at *4 (D. Md. Nov. 20, 2014).
Gillum put on anti-skid and oil resistant work boots that he
believed were sufficient for the snowy conditions.   ECF No. 38-3
at 2.   Whether he should have foreseen the possibility of ice
under the snow and put on his cleats is a question for the jury
to resolve.   *See Abell v. BVF Skylark, Ltd. P'ship.*, No. CCB-AA-
2425, 2012 WL 2675281, at *2-3 (D. Md. July 5, 2012); *Menish v.
Polinger Co.*, 356 A.2d 233, 239 (Md. 1976).   Likewise, a jury
must resolve whether a reasonable individual would have remained
in the Pilot or talked to an employee.   Accordingly, the Court
cannot say as a matter of law that Gillum was contributorily
negligent.

III. Conclusion

For the reasons stated above, Pilot's motion to strike will be granted; the remaining motions will be denied.

_____6/22/15_____                    _____
Date                                     William D. Quarles, Jr.
                                         United States District Judge